# EXHIBIT 1



STATE OF NEW YORK
COUNTY OF NEW YORK

**<u>CERTIFICATION</u>**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from French into English of the attached document.

*mohamed saheeb*

Mohamed Saheeb, Senior Quality Associate
Lionbridge

11/27/2025

**CANADA**

**PROVINCE OF QUEBEC**
District of Quebec

NO.: 200-17-037981-255

**SUPERIOR COURT**
(Civil Division)

---

**NUTRIART S.E.C.,** a limited partnership with head office at 550 Godin Street, Quebec City, Quebec, G1M 2K2

Plaintiff

v.

**ECUADOR KAKO PROCESSING PROECUAKAO S.A.**, with head office at Km 14.5 Via a Daule, Guayaquil, Ecuador

Defendant

---

**ORIGINATING APPLICATION FOR DAMAGES**
(Art. 1611 et seq. C.C.Q.)

---

**IN SUPPORT OF ITS ORIGINATING APPLICATION, THE PLAINTIFF STATES THE FOLLOWING:**

**THE PARTIES**

1.  The plaintiff is a limited partnership engaged in the manufacture and processing of food products, including the manufacture of chocolate and fillings, as shown in the statement of information on a partnership, submitted in support of the present case as **Exhibit P-1**;

2.  The defendant is an Ecuadorian company engaged in the processing of cocoa beans and semi-finished cocoa-based products, as can be seen from an extract of the defendant's website produced in support hereof as **Exhibit P-2**;

**THE FACTS**

3.  On May 1, 12 and 15, 2025, the plaintiff ordered a large quantity of cocoa liquor from the defendant for

delivery in May and June 2025, as shown in the purchase orders filed collectively in support of this case as **Exhibit P-3**;

4.  The defendant certifies that its products contain no traces of peanuts, as can be seen from the technical data sheet, the FSSC 22000 certification and the declarations concerning allergens, filed collectively in support hereof as **Exhibit P-4**;

5.  On May 27, June 9 and June 10, 2025, the plaintiff received the products ordered from the defendant, as evidenced by the delivery slips filed collectively in support hereof as **Exhibit P-5**;

6.  On June 25, 2025, the plaintiff discovered, during quality control tests of its products, the presence of peanut contamination;

7.  Following this discovery, the plaintiff proceeded to the individual analysis of each of the raw materials used in the manufacture of the contaminated products in order to determine the source of this contamination;

8.  The plaintiff then discovered that the peanut contamination originates from the cocoa liquor used in the manufacture of its products, as evidenced by the certificates of analysis filed collectively in support hereof as **Exhibit P-6**;

9.  In this regard, the contaminated cocoa liquor samples came from a batch originating in Ecuador;

10. However, the plaintiff has only one Ecuadorian supplier of cocoa liquor;
11. Thus, the only possible source of peanut contamination comes from the cocoa liquor manufactured and sold by the defendant;

12. At the time the contamination was discovered, the plaintiff had already sold significant quantities of products made from the contaminated cocoa liquor to customers;

13. The plaintiff certifies to its customers that its plant is free of allergenic products such as peanuts;

14. Due to the undeclared peanut contamination in the cocoa liquor manufactured by the defendant, the plaintiff was required, at the direction of the Canadian Food Inspection Agency ("**CFIA**"), to recall products from its customers, as evidenced by the email of July 18, 2025 produced in support of this case as **Exhibit P-7**;

**DAMAGES**

15.  The contaminated cocoa liquor was used by the plaintiff to produce a significant quantity of chocolate products, which are detailed as follows:

| PRODUCTS | QUANTITY |
|---|---|
| LCMB100 LATTE BAR 100G HEART 12EA | 8,448 ea |
| MILK CHOCOLATE CHIPS 250G 12 EA | 6,960 ea |
| MILK CHOCOLATE CHIPS 1000CT 20KG/CS LS | 10,920 kg |
| DARK-CHOCOLATE CHIPS 1000CT 20KG/CS | 262,300 kg |
| CHOCOLATE CHIPS 1000 CT 20KG/CS PUISSANCE NOIR | 101,020 kg |
| DARK CHOCOLATE CHIPS 4000CT 20KG/CS | 67,280 kg |
| DARK CHOCOLATE CHIPS 4000CT 20KG/CS | 194,320 kg |
| DARK CHOCOLATE CHIPS 1000CT 22.68KG/50LB US | 123,696.72 kg |
| DARK CHOCOLATE CHIPS 10000CT 20KG/CS | 18,500 kg |
| SEMI-SWEET CHOCOLATE CHIPS 10000CT WITHOUT DEX 20KG/CS | 100,080 kg |
| DARK CHOCOLATE CHIPS 6500CT 22.68KG/50LB | 56,064.96 kg |
| DARK CHOCOLATE CHIPS WITHOUT DEX 2000 CT 20 KG | 29,760 kg |
| DARK CHOCOLATE CHIPS WITHOUT DEX 2000CT 22.68 KG/50LB US | 19,708.92 kg |
| SEMI-SWEET CHOC. PIECES ROMEO 22.68KG/50LB | 46,267.20 kg |
| SEMI-SWEET CHOC. PIECES 600CT 22.68KG/50LB US | 53,298 kg |
| LIQUID MILK CHOCOLATE | 69,970 kg |
| LIQUID MILK CHOCOLATE CLEAN LABEL | 90,017 kg |
| SEMI-SWEET CHOC. PIECES WITHOUT DEX 700KG/TOT | 55,300 kg |

| | |
|---|---|
| MILK CHOCOLATE BAR 40G 24EA | 70,272 kg |
| 100 G MILK CHOCOLATE CR. RICE BAR - CLASSIC SLIM | 58,956 kg |
| 100 G MILK CHOCOLATE MINT BAR - CLASSIC SLIM | 64,452 kg |
| BROKEN PIECES BULK 3.5 KG | 5,880.893 kg |
| SIGNATURE MILK CHOCOLATE MAPLE 12G/5 KG | 256,455 kg |
| MILK CHOCOLATE CHIPS LS 250G BOX | 26,345.004 kg |
| MILK CHOCOLATE CHIPS BAG 11.5OZ RALEYS 12EA | 5,472 kg |
| SEMISWEET CHIPS & PIECES BAG NOS COMPL. 12 EA | 23,484 kg |
| Dark CHOCOLATE CHIPS BAG 225G NOS COMPLIMENTS 12EA | 22,596 kg |
| SEMISWEET CHOC. PIECES WITHOUT DEX 22.68 KG | 257,440.68 kg |
| MILK-CHOCOLATE WAFERS 22.68 KG | 28,123.20 kg |
| DARK-CHOCOLATE CHIPS 1000CT 850KG | 4,989.50 kg |
| DARK-CHOCOLATE CHIPS 2000CT 850KG | 51,850 kg |
| MILK-CHOCOLATE CHIPS 5000CT 850KG | 62,050 kg |
| MILK CHOCOLATE 1000CT 900KG | 26,100 kg |
| MILK CHOCOLATE 1000CT 900KG | 16,100 kg |

16.    Due to the product recall, the plaintiff cannot sell the manufactured products and has been forced to reimburse customers to whom it had already sold certain products;

17.    In addition to reimbursing the purchase price of the products to its customers, the plaintiff was obliged to compensate some of these customers for the damages they suffered due to product contamination;

18.    The plaintiff is also at risk of significant lawsuits for damages suffered by its customers as a result of the product recall;

19.    The damages suffered by the plaintiff due to peanut contamination of the cocoa liquor currently amount to $14,847,272.67, subject to adjustment;

20.    The defendant is liable for the damages suffered by the plaintiff because it was responsible for the manufacture of the contaminated cocoa liquor and failed to disclose this contamination to the plaintiff;

21.    The Quebec courts have the required territorial jurisdiction to hear this dispute pursuant to article 3148 C.C.Q, since the plaintiff's financial injury was suffered in Quebec City, in the judicial district of Quebec City;

22.    This application is well founded in fact and in law;

**FOR THESE REASONS, MAY IT PLEASE THE COURT TO:**

**GRANT** this Originating Application for Damages;

**ORDER** the defendant to pay the plaintiff the sum of $14,847,272.67 in damages, in addition to interest and additional indemnity from the date of service;

**THE WHOLE** with costs.


Quebec City, September 10, 2025


[signature]

**CAIN LAMARRE, s.e.n.c.r.l.**
Me Andréanne Daoust
andreanne.daoust@cainlamarre.ca
500 Grande Allée Est, Suite 1
Quebec City, Quebec G1R 2J7
Telephone: 418-522-4580
Fax: 418-529-9590
Plaintiff's Counsel
Our reference: 20-25-5501

## NOTICE OF SUMMONS

(Art. 145 et seq. C.C.P.)

**Filing of a Legal Application**

BE IT NOTED that the plaintiff has filed this originating application with the registry of the Superior Court of the judicial district of Quebec.

**Documents supporting the application**

In support of its originating application, the plaintiff submits the following exhibits:

P-1:    Plaintiff Information Statement from the Enterprise Register;

P-2:    Excerpt from the defendant's website;

P-3:    Purchase orders filed collectively;

P-4:    Technical data sheets, FSSC 22000 certification and declarations concerning allergens, filed collectively;

P-5:    Delivery notes filed collectively;

P-6:    Certificates of analysis filed collectively;

P-7:    Email dated July 18, 2025;

**Response to this application**

You must respond to this application in writing, either personally or through a lawyer, at the courthouse of name address of courthouse [sic], located at 300 Boulevard Jean Lesage, Quebec, province of Quebec, G1K 8K6 within 15 days of service of this application or, if you have no domicile, residence, or establishment in Quebec, within 30 days of this application. This response must be notified to the plaintiff's lawyer or, if the plaintiff is not represented, to the plaintiff itself.

**Failure to respond**

If you do not respond within the specified period of 15 or 30 days, as the case may be, a default judgment may be rendered against you without further notice upon expiry of this period and you may, depending on the circumstances, be required to pay court costs.

**Content of the response**

*(If the simplified rules specific to the recovery of certain debts in the Court of Quebec do not apply to the application.)*

> In your response, you must state your intention, i.e. whether:
>
> • to agree to settle the case;
> • to propose mediation to resolve the dispute;
> • to contest this application and, in cases required by the Code of Civil Procedure, to establish, in cooperation with the plaintiff, the protocol that will govern the proceedings. This protocol must be filed with the registry of the district court mentioned above within 45 days of the service of this notice. However, this period is three months in family matters or if you have no domicile, residence or establishment in Quebec;
> • to propose the holding of an amicable settlement conference.
>
> This response must include your contact details and, if you are represented by a lawyer, their name and contact details.

**Place where the legal application was filed**

Except in certain cases, this application will be heard in the judicial district where you live or, failing that, where you reside or the domicile you have chosen or agreed upon with the plaintiff. If it has not been filed in the district where it can be heard and you want it to be transferred there, you can make a request to the court to that effect.

However, if this application relates to an employment, consumer or insurance contract or to the exercise of a mortgage right on the building serving as your principal residence, it shall be heard in the district where the domicile or residence of the employee, consumer or insured is located, whether plaintiff or defendant, in the district where this building is located or in the district where the injury occurred in the case of a property insurance claim. If this application has not been filed in the district where it can be heard and you want it transferred there, you may, provided no agreement to the contrary can be enforced against you, file a request to that effect with the special clerk of that district.

**Transfer of the application to the Small Claims Division**

If you have the capacity to act as an applicant under the rules relating to the recovery of small claims, you can contact the court clerk to have this claim processed according to those rules. If you make this request, the plaintiff's legal fees must not exceed the amount of fees provided for the recovery of small claims.

**Notice to attend a case management conference**

> *(If the simplified rules specific to the recovery of certain debts in the Court of Quebec do not apply to the application)*
>
> *Within 20 days of the filing of the aforementioned protocol, the court may summon you to a case management conference to ensure the smooth running of the proceedings. Otherwise, this protocol will be deemed accepted.*

**Application accompanied by a Notice of Presentation**

An application submitted during proceedings, an application covered by Books III or V, with the exception in particular of those relating to family matters mentioned in article 409 and those relating to security interests mentioned in Article 480, or certain applications covered by Book VI of the Code, including the appeal for judicial review, shall be accompanied, not by a notice of summons, but by a notice of presentation. In such cases, the preparation of an instance protocol is not required.

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

Quebec City, September 10, 2025

[signature]

**CAIN LAMARRE, s.e.n.c.r.l.**
Me Andréanne Daoust,
andreanne.daoust@cainlamarre.ca
500 Grande Allée Est, Suite 1,
Quebec City, Quebec G1R 2J7
Telephone: 418-522-4580
Fax: 418-529-9590
Plaintiff's Counsel
Our reference: 20-25-5501

**CANADA**
**SUPERIOR COURT (Civil Division)**
**PROVINCE OF QUEBEC**
**DISTRICT OF QUEBEC**

No.: 200-17-037981-255

**NUTRIART S.E.C.**

Plaintiff v.

**ECUADOR KAKO PROCESSING PROECUAKAO**

**S.A.**

Defendant

**ORIGINATING APPLICATION FOR DAMAGES**
(Art. 1611 et seq. C.C.Q.)

N/D : 20-25-5501
**Me Andréanne Daoust**
Plaintiff's Counsel
E-mail : andreanne.daoust@cainlamarre.ca
Notification : notification.cain.quebec@cainlamarre.ca
Code : BC-3551

CAIN
LAMARRE
AVOCATS & NOTAIRES

500 Grande Allée Est, Suite 1
Quebec City, Quebec
G1R 2J7
Telephone:        418 522-4580
Fax:              418 529-9590

P.O. Box 52

**C A N A D A**

**PROVINCE DE QUÉBEC**
District de Québec

NO : 200-17-037981-255

**COUR SUPÉRIEURE**
(Chambre civile)

**NUTRIART S.E.C.** société en commandite ayant son siège au 550, rue Godin, à Québec, province de Québec, G1M 2K2

Demanderesse

c.

**ECUADOR KAKO PROCESSING PROECUAKAO S.A.**, ayant son siège au Km 14.5 Via a Daule, Guayaquil, Ecuador

Défenderesse

---

### DEMANDE INTRODUCTIVE D'INSTANCE EN DOMMAGES
(art. 1611 et ss C.c.Q.)

---

**AU SOUTIEN DE SA DEMANDE INTRODUCTIVE D'INSTANCE, LA DEMANDERESSE EXPOSE CE QUI SUIT :**

**LES PARTIES**

1.  La demanderesse est une société en commandite œuvrant dans le domaine de la fabrication et transformation de produits alimentaires, dont notamment la fabrication de chocolat et de garnitures tel qu'il appert de l'état des renseignements d'une personne morale, produit au soutien des présentes comme **pièce P-1**;

2.  La défenderesse est une compagnie équatorienne œuvrant dans la transformation des fèves de cacao et de produits semi-finis à base de cacao, tel qu'il appert d'un extrait du site Internet de la défenderesse produit au soutien des présentes comme **pièce P-2**;

**LES FAITS**

3.  Les 1, 12 et 15 mai 2025, la demanderesse commande une quantité importante de liqueur de cacao auprès de la défenderesse afin d'en obtenir

la livraison en mai et juin 2025, tel qu'il appert des bons de commande produits en liasse au soutien des présentes comme **pièces P-3**;

4.   La défenderesse certifie que ses produits ne contiennent aucune trace d'arachide, tel qu'il appert de la fiche technique, de la certification FSSC 22000 et des déclarations concernant les allergènes, produits en liasse au soutien des présentes comme **pièce P-4**;

5.   Les 27 mai, 9 et 10 juin 2025, la demanderesse reçoit les produits commandés auprès de la défenderesse, tel qu'il appert des bons de livraison produits en liasse au soutien des présentes comme **pièce P-5**;

6.   Le 25 juin 2025, la demanderesse découvre dans le cadre de tests de contrôle de qualité de ses produits la présence de contamination aux arachides;

7.   À la suite de cette découverte, la demanderesse procède à l'analyse individuelle de chacune des matières premières utilisées dans la fabrication des produits contaminés afin de déterminer la source de cette contamination;

8.   La demanderesse découvre alors que la contamination aux arachides émane de la liqueur de cacao utilisée dans la fabrication de ses produits, tel qu'il appert des certificats d'analyse produits en liasse au soutien des présentes comme **pièce P-6**;

9.   À cet égard, les échantillons de liqueur de cacao contaminés proviennent d'un lot provenant de l'Équateur;

10.  Or, la demanderesse n'a qu'un seul fournisseur équatorien de liqueur de cacao;

11.  Ainsi, la seule source possible de contamination aux arachides provient de la liqueur de cacao fabriquée et vendue par la défenderesse;

12.  Au moment de la découverte de la contamination, la demanderesse avait déjà vendu à des clients des quantités importantes de produits fabriqués à base de la liqueur de cacao contaminée;

13.  La demanderesse certifie à ses clients que son usine est exempte de produits allergènes tels que les arachides;

14.  En raison de la contamination non déclarée aux arachides dans la liqueur de cacao fabriquée par la défenderesse, la demanderesse a été dans l'obligation, à la demande de l'Agence canadienne d'inspection des aliments (« **ACIA** »), de procéder à un rappel de produits auprès de ses clients, tel

qu'il appert du courriel du 18 juillet 2025 produit au soutien des présentes comme **pièce P-7**;

## LES DOMMAGES

15. La liqueur de cacao contaminée a été utilisée par la demanderesse pour produire une quantité importante de produits de chocolat, laquelle se détaille comme suit :

| PRODUITS | QUANTITÉ |
|---|---|
| LCMB100 BARRE LATTÉ 100G HEART 12EA | 8 448 ea |
| BRISURE CHOCOLAT AU LAIT 250G 12 EA | 6 960 ea |
| BRISURES CL 1000CT 20KG/CS LS | 10 920 kg |
| BRISURE  CN 1000CT 20KG/CS | 262 300 kg |
| BRISURES 1000 CT 20KG/CS PUISSANCE NOIR | 101 020 kg |
| BRISURE CN 4000CT 20KG/CS | 67 280 kg |
| BRISURE CN 4000CT 20KG/CS | 194 320 kg |
| BRISURES CN 1000CT 22.68KG/50LB US | 123 696,72 kg |
| BRISURE CN 10000CT 20KG/CS | 18 500 kg |
| BRISURES CS.S  10000CT S.DEX 20KG/CS | 100 080 kg |
| BRISURES CN 6500CT 22.68KG/50LB | 56 064,96 kg |
| BRISURE CN S DEX 2000 CT 20 KG | 29 760 kg |
| BRISURE CN S DEX 2000CT 22.68 KG/50LB US | 19 708,92 kg |
| MORC. CHO. SS ROMEO 22.68KG/50LB | 46 267,20 kg |
| MORC. CHO. SS 600CT 22.68KG/50LB US | 53 298 kg |
| CHOCOLAT LAIT LIQUIDE | 69 970 kg |
| LIQ CHOCOLAT AU LAIT CLEAN LABEL | 90 017 kg |
| MORC CHOC. SEMI-SUCRE SANS DEX 700KG/TOT | 55 300 kg |

| | |
|---|---|
| BARRE CL 40G 24EA | 70 272 kg |
| BARRE 100 G CL RIZ CR. - CLASSIQUE SLIM | 58 956 kg |
| BARRE 100 G CL MENTHE - CLASSIQUE SLIM | 64 452 kg |
| IMPARFAITS VRAC 3.5 KG | 5 880,893 kg |
| SIGNATURE CL ERABLE 12G/5 KG | 256 455 kg |
| BRISURES CL LS 250G CAISSE | 26 345,004 kg |
| SAC BRISURES CL 11.5OZ RALEYS 12EA | 5 472 kg |
| SAC BRIS & MORCEAUX SS NOS COMPL. 12 EA | 23 484 kg |
| SAC BRIS CN 225G NOS COMPLIMENTS 12EA | 22 596 kg |
| MORC. CHOC. SS SANS DEX 22.68 KG | 257 440,68 kg |
| PASTILLES CL 22.68 KG | 28 123,20 kg |
| BRISURE CN 1000CT 850KG | 4 989,50 kg |
| BRISURE CN 2000CT 850KG | 51 850 kg |
| BRISURE CL 5000CT 850KG | 62 050 kg |
| CL 1000CT 900KG | 26 100 kg |
| CL 1000CT 900KG | 16 100 kg |

16.    En raison du rappel des produits, la demanderesse ne peut vendre les produits fabriqués et a été dans l'obligation de rembourser les clients à qui elle avait déjà vendu certains produits;

17.    En plus de rembourser le prix d'achat des produits à ses clients, la demanderesse a été dans l'obligation d'indemniser certains de ces clients pour les dommages subis par ceux-ci en raison de la contamination des produits;

18.    La demanderesse est également à risque de poursuites importantes pour les dommages subis par ses clients en raison du rappel des produits;

19.     Les dommages subis par la demanderesse en raison de la contamination aux arachides de la liqueur de cacao s'élèvent à ce jour à la somme de 14 847 272,67 $, sauf à parfaire;

20.     La défenderesse est responsable des dommages subis par la demanderesse en ce qu'elle est à l'origine de la fabrication de la liqueur de cacao contaminée et n'a pas divulgué cette contamination à la demanderesse;

21.     Les tribunaux québécois ont la compétence territoriale requise pour se saisir du présent litige suivant l'article 3148 C.c.Q., puisque le préjudice financier de la demanderesse a été subi à Québec, dans le district judiciaire de Québec;

22.     La présente demande est bien fondée en faits et en droit;

**POUR CES MOTIFS, PLAISE À LA COUR :**

**ACCUEILLIR** la présente Demande introductive d'instance en dommages;

**CONDAMNER** la défenderesse à payer à la demanderesse la somme de 14 847 272,67 $, à titre de dommages-intérêts en plus des intérêts et de l'indemnité additionnelle à compter de l'assignation;

**LE TOUT** avec frais de justice.

Québec, le 10 septembre 2025

*Cain Lamarre*

**CAIN LAMARRE, s.e.n.c.r.l.**
Me Andréanne Daoust
andreanne.daoust@cainlamarre.ca
500, Grande Allée Est, bureau 1
Québec (Québec) G1R 2J7
Téléphone : 418-522-4580
Télécopieur : 418-529-9590
Avocats de la demanderesse
Notre référence : 20-25-5501

## AVIS D'ASSIGNATION

(Art. 145 et suivants C.p.c.)

**Dépôt d'une demande en justice**

PRENEZ AVIS que la demanderesse a déposé au greffe de la Cour supérieure du district judiciaire de Québec la présente demande introductive d'instance.

**Pièces au soutien de la demande**

Au soutien de sa demande introductive d'instance, le demandeur invoque les pièces suivantes :

P-1 :    État des renseignements de la demanderesse au Registre des entreprises;

P-2 :    Extrait du site Internet de la défenderesse;

P-3 :    En liasse, bons de commande;

P-4 :    En liasse, fiche technique, certification FSSC 22000 et déclarations concernant les allergènes;

P-5 :    En liasse, bons de livraison;

P-6 :    En liasse, certificats d'analyse;

P-7 :    Courriel du 18 juillet 2025;

**Réponse à cette demande**

Vous devez répondre à cette demande par écrit, personnellement ou par avocat, au Palais de justice de nom été adresse du palais, situé au 300, boul. Jean Lesage, Québec, province de Québec, G1K 8K6 dans les 15 jours de la signification de la présente demande ou, si vous n'avez ni domicile, ni résidence, ni établissement au Québec, dans les 30 jours de celle-ci. Cette réponse doit être notifiée à l'avocat du demandeur ou, si ce dernier n'est pas représenté, au demandeur lui-même.

**Défaut de répondre**

Si vous ne répondez pas dans le délai prévu, de 15 ou de 30 jours, selon le cas, un jugement par défaut pourra être rendu contre vous sans autre avis dès l'expiration de ce délai et vous pourriez, selon les circonstances, être tenu au paiement des frais de justice.

**Contenu de la réponse**

*(Si les règles simplifiées particulières au recouvrement de certaines créances à la Cour du Québec ne s'appliquent pas à la demande.)*

Dans votre réponse, vous devez indiquer votre intention, soit :

- de convenir du règlement de l'affaire ;
- de proposer une médiation pour résoudre le différend ;
- de contester cette demande et, dans les cas requis par le code de procédure civile, d'établir à cette fin, en coopération avec le demandeur, le protocole qui régira le déroulement de l'instance. Ce protocole devra être déposé au greffe de la Cour du district mentionné plus haut dans les 45 jours de la signification du présent avis. Toutefois, ce délai est de 3 mois en matière familiale ou si vous n'avez ni domicile, ni résidence, ni établissement au Québec ;
- de proposer la tenue d'une conférence de règlement à l'amiable.

Cette réponse doit mentionner vos coordonnées et, si vous êtes représenté par un avocat, le nom de celui-ci et ses coordonnées.

**Lieu du dépôt de la demande en justice**

Cette demande est, sauf exceptions, entendue dans le district judiciaire où est situé votre domicile ou, à défaut, votre résidence ou le domicile que vous avez élu ou convenu avec le demandeur. Si elle n'a pas été déposée dans le district où elle peut être entendue et que vous voulez qu'elle y soit transférée, vous pouvez présenter une demande au tribunal à cet effet.

Cependant, si cette demande porte sur un contrat de travail, de consommation ou d'assurance ou sur l'exercice d'un droit hypothécaire sur l'immeuble vous servant de résidence principale, elle est entendue dans le district où est situé le domicile ou la résidence du salarié, du consommateur ou de l'assuré, qu'il soit demandeur ou défendeur, dans le district où est situé cet immeuble ou dans le district où le sinistre a eu lieu s'il s'agit d'une assurance de biens. Si cette demande n'a pas été déposée dans le district où elle peut être entendue et que vous voulez qu'elle y soit transférée, vous pouvez, sans qu'une convention contraire puisse vous être opposée, présenter une demande à cet effet au greffier spécial de ce district.

**Transfert de la demande à la Division des petites créances**

Si vous avez la capacité d'agir comme demandeur suivant les règles relatives au recouvrement des petites créances, vous pouvez communiquer avec le greffier du tribunal pour que cette demande soit traitée selon ces règles. Si vous faites cette demande, les frais de justice du demandeur ne pourront alors excéder le montant des frais prévus pour le recouvrement des petites créances.

**Convocation à une conférence de gestion**

> *(Si les règles simplifiées particulières au recouvrement de certaines créances à la Cour du Québec ne s'appliquent pas à la demande)*
>
> *Dans les 20 jours suivant le dépôt du protocole mentionné plus haut, le tribunal pourra vous convoquer à une conférence de gestion en vue d'assurer le bon déroulement de l'instance. À défaut, ce protocole sera présumé accepté.*

**Demande accompagnée d'un avis de présentation**

Une demande présentée en cours d'instance, une demande visée par les livres III ou V, à l'exception notamment de celles portant sur les matières familiales mentionnées à l'article 409 et de celles relatives aux sûretés mentionnées à l'article 480, ou encore certaines demandes visées par le livre VI du Code, dont le pourvoi en contrôle judiciaire, sont accompagnées, non pas d'un avis d'assignation, mais d'un avis de présentation. Dans ce cas, la préparation d'un protocole de l'instance n'est pas requise.

**VEUILLEZ AGIR EN CONSÉQUENCE.**

Québec, le 10 septembre 2025

**CAIN LAMARRE, s.e.n.c.r.l.**
Me Andréanne Daoust
andreanne.daoust@cainlamarre.ca
500, Grande Allée Est, bureau 1
Québec (Québec) G1R 2J7
Téléphone : 418-522-4580
Télécopieur : 418-529-9590
Avocats de la demanderesse
Notre référence : 20-25-5501

**C A N A D A**
**COUR SUPÉRIEURE (Chambre civile)**
**PROVINCE DE QUÉBEC**
**DISTRICT DE QUÉBEC**

Nº :  200-17-037981-255

**NUTRIART S.E.C.**

Demanderesse

c.

**ECUADOR KAKO PROCESSING PROECUAKAO S.A.**

Défenderesse

**DEMANDE INTRODUCTIVE
D'INSTANCE EN DOMMAGES**
(Art. 1611 et ss C.c.Q.)

N/D : 20-25-5501
**Me Andréanne Daoust**
Avocats de la demanderesse
Courriel : andreanne.daoust@cainlamarre.ca
Notification : notification.cain.quebec@cainlamarre.ca
Code : BC-3551



500, Grande Allée Est, bureau 1
Québec (Québec) G1R 2J7
Téléphone :    418 522-4580
Télécopieur :  418 529-9590

CASIER 52